**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**AKRON DIVISION**

| | |
|---|---|
| **LAURENCE STRIMPLE** | **CASE NO.** |
| ℅ DannLaw | |
| 15000 Madison Avenue, | **JUDGE** |
| Lakewood, OH 44107 | |
| | **MAGISTRATE JUDGE** |
| Plaintiff, | |
| v. | **COMPLAINT FOR DAMAGES** |
| | |
| **YENDO, INC.** | **JURY DEMAND ENDORSED HEREON** |
| 3309 Elm Street, Suite 340 | |
| Dallas, TX 75226-1637 | |
| | |
| Defendant. | |

Plaintiff Laurence Strimple and for his Complaint for Damages against Defendant Yendo,

Inc. states as follows:

**PARTIES, JURISDICTION, AND VENUE**

1.      This action arises out of violations of the Fair Credit Reporting Act (FCRA), 15

U.S.C. §§ 1681 et seq., Ohio Revised Code Chapter 1309 regarding improper repossession and

inadequate notice of sale, the Ohio Consumer Sales Practices Act, and common law claims for

fraud, conversion, negligence, unjust enrichment, and intentional infliction of emotional distress

committed by the Defendant in connection with a fraudulent vehicle-secured loan and

subsequent wrongful collection activities against an identity theft victim.

2.      Plaintiff Laurence Strimple ("Plaintiff" or "Strimple") is a natural person residing

in the State of Ohio. At all times relevant to this action, Plaintiff is a "consumer" as defined by

the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681a(c), in that he is a natural person to

whom consumer credit is offered or extended, and is the subject of a consumer report. Plaintiff is

also a "consumer" as defined by the Ohio Consumer Sales Practices Act, R.C. 1345.01(D), as he

is a natural person who was the subject of and affected by a purported consumer transaction involving his personal vehicle used for personal, family, or household purposes.

3.      Defendant Yendo, Inc. ("Defendant" or "Yendo") is a corporation organized under the laws of the State of Texas, with its principal place of business located at 3309 Elm Street, Suite 340, Dallas, TX 75226. Yendo is engaged in the business of extending consumer credit secured by motor vehicles and regularly uses the mails, telephone, and other instrumentalities of interstate commerce in connection with its lending and collection activities. Yendo is a "person" that furnishes information to consumer reporting agencies as defined by 15 U.S.C. § 1681s-2, and is a "supplier" as defined by Ohio Revised Code § 1345.01(C) as it is engaged in the business of effecting consumer transactions.

4.      For the purposes of this Complaint, unless otherwise indicated, "Yendo" means all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of Defendant Yendo.

5.      At all times relevant to this action, Yendo was not registered with the Ohio Secretary of State to transact business in Ohio, as required by Ohio Revised Code § 1703.03. Despite this lack of registration, Yendo is listed as a participant on the Ohio Bureau of Motor Vehicles' Electronic Lien and Title (ELT) Participant List, last revised on 7/25/2025, and has engaged in lending and collection activities directed at Ohio residents, including Plaintiff, by placing liens on Ohio vehicles, conducting repossessions, sending collection notices, and furnishing information to credit reporting agencies.

6.      This court has jurisdiction over this matter pursuant to 15 U.S.C. § 1681p and 28 U.S.C. § 1331 for federal Fair Credit Reporting Act claims, as well as pursuant to 28 U.S.C. § 1367 for supplemental jurisdiction over state law claims.

7.     Venue is proper in the Northern District of Ohio pursuant to 28 U.S.C. § 1391 as the acts and omissions giving rise to this action occurred within this district, where Plaintiff resides, where his vehicle was repossessed, and where Defendant directed its lending and collection activities.

## STATEMENT OF FACTS

8.     Plaintiff Laurence Strimple ("Plaintiff" or "Strimple") is an individual residing at 9161 Valley View Road, Macedonia, Ohio 44056, and is the registered owner of a 2015 Chevrolet Silverado 2500HD, VIN 1GC2KUEG7FZ127901 (the "Vehicle").

9.     On or about April 22, 2025, Plaintiff's Vehicle was repossessed from his driveway in Macedonia, Ohio, without his knowledge, consent, or understanding of why this was happening.

10.     Plaintiff discovered the repossession and immediately contacted the Macedonia Police Department in confusion and distress. When Plaintiff called the police, dispatch informed him that they were already aware of the repossession because the repossession company had contacted them directly as they towed the vehicle from Plaintiff's driveway. Plaintiff obtained the name of the repossession company, Independent Recovery Systems ("IRS"), from the police, then immediately called IRS who informed him that a company called Yendo had used his vehicle as collateral for a personal loan. This was the first time Plaintiff had ever heard of Yendo.

11.     Within minutes of learning this shocking information, Plaintiff contacted Yendo by phone to report the identity theft and explain that he had never applied for or authorized any loan. During this call, Yendo alleged it still maintained a legitimate loan and threatened to sell the vehicle if Plaintiff did not pay the remaining balance. However, Yendo representatives admitted during the same call that it did not have any phone number for Plaintiff in its system,

nor did it have his correct email address, acknowledging it had no way to contact him about the alleged loan. Despite these admissions that clearly supported Plaintiff's fraud claims, Yendo essentially told Plaintiff it had no evidence of fraud and refused to acknowledge the fraudulent nature of the loan.

12.     The very next day after the phone call, Plaintiff received an undated notice from Yendo stating the company's intent to sell the repossessed vehicle. The notice provided no balance due or amount owed, simply stating "We have your Collateral because you broke promises in our Agreement." The notice further stated that Yendo would sell the Collateral in a private sale "sometime" after May 8, 2025, providing no specific date for the sale. To learn the balance allegedly owed, Plaintiff was instructed to call Yendo's toll-free number. This inadequate notice demonstrated Yendo's continued refusal to investigate the fraud claims despite the clear warning signs, Plaintiff's immediate notifications, and its own admission that it lacked basic contact information for the alleged borrower.

13.     Faced with the threat of losing his vehicle permanently and the vague timeline stating the sale would occur "sometime" after May 8, 2025, Plaintiff became increasingly concerned that his truck would be sold and gone forever. Under this duress, Plaintiff felt compelled to pay the alleged loan balance of $5,130.02 to Yendo in order to recover his vehicle. The financial impact was severe, as Plaintiff was required to withdraw money from his retirement account to satisfy the alleged loan balance. He then drove to Akron to retrieve his truck from IRS.

14.     After making the payment, Plaintiff called Yendo again to request written confirmation that the account balance had been paid in full, hoping to resolve the matter and possibly seek reimbursement once the fraud was properly investigated. Yendo subsequently sent

Plaintiff an email congratulating him on paying off the outstanding balance associated with his closed Yendo account. The email further stated that his title would be shipped back to him. Notably, neither the inadequate repossession notice nor the email confirming the account was paid in full contained any account number for the alleged account, further demonstrating the questionable nature of Yendo's documentation practices.

15.    Following the transmission of this confirmation email, Yendo ceased all communication with Plaintiff and refused to provide him or the police with any documentation concerning the alleged Yendo account.

16.    Left with no cooperation from Yendo, Plaintiff was forced to conduct his own investigation to understand what had happened. Through his investigation, Plaintiff learned that in November 2024, an unknown individual, using Plaintiff's stolen personal identifying information, submitted a loan application to Yendo for a credit line secured by Plaintiff's 2015 Chevrolet Silverado 2500HD. The loan application was accompanied by a Limited Power of Attorney form purporting to bear Plaintiff's signature.

17.    Plaintiff discovered that despite the fraudulent nature of the application, Yendo had approved the loan, placed a lien on Plaintiff's vehicle, and caused the Ohio Bureau of Motor Vehicles to issue an updated title reflecting Yendo as the lienholder as of December 24, 2024.

18.    When Plaintiff went to the BMV in Northfield, OH to remove Yendo as the lienholder, the clerk informed him that the person who had filed for the new title in December had falsely claimed that the original title was lost and requested a replacement title, despite the fact that Plaintiff still possessed the original title at his home.

19.    During his investigation, Plaintiff learned from Yendo's website that according to Yendo's advertised loan requirements to approve a credit line, Yendo requires vehicle make,

model, year, mileage, condition, equity in vehicle, and ownership status. Yendo's website further states that borrowers are required to provide photos and documents, including exterior photos of the front of vehicle, driver's side, back of vehicle with license plate, and passenger side, as well as the vehicle title. However, it remains unknown whether the fraudster actually submitted such photographs and documents relating to the vehicle to Yendo because Plaintiff has not been able to obtain the documents submitted to Yendo in connection with the loan application, despite his requests.

20.     Yendo failed to implement or follow reasonable procedures to verify the identity of the applicant before extending credit and placing a lien on Plaintiff's property, and failed to promptly release the lien or investigate the fraud after being notified of the identity theft.

21.     In a bizarre twist, the unknown criminal fraudster sent Plaintiff a bouquet of flowers from a local florist with a note apologizing for any harm he suffered as a result of their fraudulent actions. Plaintiff later discovered that these flowers were purchased with a fraudulent credit card, resulting in a chargeback to the floral shop and causing additional harm to an innocent business.

22.     Plaintiff did not authorize, participate in, or have any knowledge of the loan application, the execution of any documents, or the granting of any power of attorney to Yendo or its agents. Plaintiff did not receive the benefit of any funds from the Yendo loan, did not authorize the transaction, and was at all times an innocent victim of identity theft.

23.     To make matters worse, Yendo reported the delinquent account to credit bureaus, resulting in a devastating drop of Plaintiff's credit score from the 800s to 590.

24.     As a result of Yendo's actions, Plaintiff suffered actual damages, including but not limited to loss of use and ownership of his vehicle, damage to his credit, financial losses from the forced payment and retirement account withdrawal, and emotional distress.

### COUNT ONE:
### VIOLATION OF THE FAIR CREDIT REPORTING ACT
### 15 U.S.C. § 1681s-2(b)

25.     Plaintiff restates and incorporates each of the allegations contained in the preceding paragraphs as if fully rewritten herein.

26.     Plaintiff is a "consumer" pursuant to 15 U.S.C. § 1681a(c).

27.     On April 23, 2025, Plaintiff provided Yendo with notice of dispute regarding the fraudulent account reported in his name. Plaintiff completed fraud affidavits, provided a copy of the police report documenting identity theft, and informed Yendo that he had never authorized, participated in, or had any knowledge of the loan application or any related documents. This notice included sufficient information to identify the disputed information and allow Yendo to conduct a proper investigation, including:

    a.  Yendo's own admission that it had no phone number for Plaintiff in its system;

    b.  Yendo's own admission that it did not have Plaintiff's correct email address;

    c.  Yendo's acknowledgment that it had no way to contact Plaintiff about the alleged loan;

    d.  Official police report documenting identity theft; and

    e.  Completed fraud affidavits.

28.     Despite receiving clear notice of dispute with substantial evidence of fraud, Yendo failed to conduct any meaningful investigation into the disputed information. Yendo immediately dismissed Plaintiff's fraud claims without conducting any investigation into the obvious red flags

presented. Yendo failed to review the relevant information provided by Plaintiff with the notice of dispute.

29.    Plaintiff's dispute was clearly not frivolous or irrelevant given the substantial evidence of identity theft, including Yendo's own admissions that it lacked basic contact information for the alleged borrower and the official police report documenting the fraud.

30.    Despite the overwhelming evidence that the account information was inaccurate and fraudulent, Yendo failed to correct or delete the inaccurate information from Plaintiff's credit reports.

31.    Yendo's reporting of the delinquent account to credit bureaus, resulted in a devastating drop of Plaintiff's credit score from the 800s to 590.

32.    Yendo's violations are ongoing as it refuses to provide any documentation concerning the alleged account to Plaintiff or law enforcement, ceased all communication with Plaintiff after he paid the fraudulent debt, and has failed to take any corrective action to remove the fraudulent account information from Plaintiff's credit reports.

33.    As a direct and proximate result of Yendo's violations of the FCRA, Plaintiff has suffered actual damages including severe damage to his credit score, financial harm from the credit score drop, emotional distress, and other consequential damages. Plaintiff is entitled to recover his actual damages, statutory damages, punitive damages, costs, and reasonable attorney's fees pursuant to 15 U.S.C. § 1681n and § 1681o.

**COUNT TWO:**
**IMPROPER REPOSSESSION IN VIOLATION OF R.C. § 1309.203**

34.    Plaintiff restates and incorporates each of the allegations contained in the preceding paragraphs as if fully rewritten herein.

35.    Under R.C. § 1309.203, a security interest becomes enforceable against the debtor

8

when three conditions are met: (1) value has been given; (2) the debtor has rights in the collateral or the power to transfer rights in the collateral to a secured party; and (3) the debtor has authenticated a security agreement that provides a description of the collateral.

36. In this case, Yendo lacked a valid security interest in Plaintiff's 2015 Chevrolet Silverado 2500HD because:

    a. No Value Given to Plaintiff: Although Yendo may have disbursed loan funds, no value was given to Plaintiff as he never received any benefit from the alleged loan. The funds were obtained fraudulently by an unknown third party using Plaintiff's stolen identity.

    b. No Authorization by True Debtor: Plaintiff, as the true owner of the vehicle, never had any agreement with Yendo and never granted Yendo any rights in the collateral. The fraudulent application and forged documents cannot create valid rights in favor of Yendo against the true owner.

    c. No Authentic Security Agreement: Plaintiff never authenticated any security agreement with Yendo. Any purported security agreement was fraudulently executed by an unknown individual using Plaintiff's stolen personal identifying information and forged signature.

37. Even if a security interest had been created (which it was not), Yendo's attempt to perfect its interest was based entirely on fraud. The filing that caused the Ohio Bureau of Motor Vehicles to issue an updated title reflecting Yendo as lienholder was accomplished through material misrepresentations, including the false claim that Plaintiff's original title was lost when Plaintiff actually retained possession of the original title at his home.

38. On or about April 23, 2025, Yendo repossessed Plaintiff's vehicle without

possessing any valid security interest in the collateral. Because Yendo lacked a valid and enforceable security interest, the repossession was unlawful and constituted conversion of Plaintiff's property.

39.     Yendo's own admissions during Plaintiff's phone call on April 23, 2025, demonstrate that Yendo knew or should have known that its security interest was invalid.

40.     Yendo's actions violated R.C. § 1309.203 by repossessing collateral without a valid security interest and failing to comply with the statutory requirements for lawful repossession.

41.     As a direct and proximate result of Yendo's improper repossession, Plaintiff suffered actual damages including loss of use of his vehicle, the financial burden of paying $5,130.02 to recover his own property, withdrawal from his retirement account, emotional distress, and other consequential damages.

## COUNT THREE:
## FAILURE TO PROVIDE PROPER NOTICE OF SALE IN VIOLATION
## OF R.C. § 1309.611

42.     Plaintiff restates and incorporates each of the allegations contained in the preceding paragraphs as if fully rewritten herein.

43.     Under Ohio Revised Code § 1309.611, a secured party must send an authenticated notification of disposition to the debtor and any secondary obligors within a reasonable time before the disposition of collateral. The notification must include sufficient information about the sale to allow the debtor to protect their interests, including the method of intended disposition, a description of the debtor's liability for any deficiency, and contact information for the secured party.

10

44.     On or about April 24, 2025, Yendo sent Plaintiff a notice purporting to satisfy the requirements of R.C. § 1309.611. However, this notice was fundamentally deficient and failed to comply with statutory requirements in multiple respects:

    a.  The notice contained no date, making it impossible for Plaintiff to determine when it was sent or to calculate the timeline for the proposed sale.

    b.  The notice failed to provide the amount allegedly owed, simply stating "We have your Collateral because you broke promises in our Agreement" without specifying any monetary amount or balance due;

    c.  The notice contained no account number or other identifying information to allow Plaintiff to verify the alleged debt or communicate effectively about the specific account;

    d.  The notice failed to adequately describe the method of intended disposition of the collateral beyond stating it would be a "private sale" to occur "sometime" after May 8, 2025; and

    e.  The notice failed to provide adequate information about Plaintiff's alleged liability for any deficiency following the sale.

45.     The deficient notice failed to provide Plaintiff with sufficient information to protect his interests or to take meaningful action regarding the proposed sale. The vague timeline of "sometime" after a specified date provided no reasonable opportunity for Plaintiff to plan or respond appropriately.

46.     As a direct result of the inadequate notice, Plaintiff was unable to properly evaluate his options and was coerced into paying the alleged debt balance of $5,130.02 under

duress to prevent the loss of his vehicle. The deficient notice deprived Plaintiff of his statutory rights and protections under Ohio law.

47.     Yendo's notice failed to comply with the requirements of R.C. § 1309.611 and related provisions governing commercially reasonable disposition of collateral, thereby violating Plaintiff's statutory rights.

48.     As a direct and proximate result of Yendo's failure to provide proper notice of sale, Plaintiff suffered actual damages including the coerced payment of $5,130.02, withdrawal from his retirement account, loss of statutory protections, emotional distress, and other consequential damages.

**COUNT FOUR:**
**VIOLATION OF THE OHIO CONSUMER SALES PRACTICES ACT**
**R.C. 1345.01,** *et seq.*

49.     Plaintiff restates and incorporates each of the allegations contained in the preceding paragraphs as if fully rewritten herein.

50.     Plaintiff is a "consumer" as defined by R.C. 1345.01(D), as he is a natural person who was targeted by and subjected to Defendant's consumer transaction activities involving his personal property used for personal, family, or household purposes.

51.     Yendo is a "supplier" as defined by R.C. 1345.01(C), as it is engaged in the business of effecting or soliciting consumer transactions, including the extension of credit secured by consumer vehicles in Ohio.

52.     The alleged loan transaction and Yendo's related activities constitute a "consumer transaction" as defined by R.C. 1345.01(A), as they involve credit extended for goods or services purchased primarily for personal, family, or household use.

12

53.     The Ohio Consumer Sales Practices Act (CSPA), R.C. 1345.02(A), prohibits suppliers from committing unfair or deceptive acts or practices in connection with a consumer transaction.

54.     R.C. 1345.03(A) further prohibits suppliers from engaging in unconscionable acts or practices in connection with consumer transactions.

55.     Yendo engaged in unfair, deceptive, and unconscionable acts and practices in connection with its fraudulent loan transaction and subsequent collection activities against Plaintiff, including but not limited to:

    a.  Deceptively representing that the alleged loan had characteristics, legal status, and collection rights that it did not have by asserting the validity of a debt when it knew or should have known the loan was fraudulent and unauthorized by the true vehicle owner;

    b.  Deceptively representing that it had proper verification procedures for loan applicants when it systematically failed to implement reasonable identity verification measures, despite advertising specific requirements on its website;

    c.  Deceptively representing that its lending services had benefits and characteristics they did not possess by presenting itself as a legitimate, responsible lender when it approved loans without proper borrower verification and ignored obvious fraud indicators;

    d.  Falsely representing the legal status of its security interest by filing liens and causing title transfers when no valid borrower relationship existed with the true vehicle owner;

e.   Engaging in unconscionable collection practices by threatening to sell Plaintiff's vehicle and demanding payment of a fraudulent debt despite being notified of identity theft and provided with police reports documenting the fraud;

f.   Providing false or misleading information regarding Plaintiff's rights and obligations by issuing an inadequate repossession notice that failed to comply with Ohio law and contained false statements about broken promises in a non-existent agreement;

g.   Using credit reporting as a weapon to coerce payment on a fraudulent debt by reporting derogatory information to credit bureaus despite knowledge of the identity theft and fraud;

h.   Engaging in systematic deception by refusing to provide documentation concerning the alleged account to Plaintiff or law enforcement while simultaneously asserting the validity of the fraudulent debt; and

i.   Operating with reckless disregard for consumer protection by approving loans without adequate verification procedures and then pursuing collection activities against innocent identity theft victims.

56.   Yendo's conduct is particularly unconscionable because it involves the knowing pursuit of collection activities against an identity theft victim despite clear evidence of fraud, including Yendo's own admissions that it lacked basic contact information for the alleged borrower.

57.   The above conduct constitutes unfair, deceptive, and unconscionable acts and practices in violation of R.C. 1345.02 and R.C. 1345.03.

58.     Yendo's actions are further deceptive and unconscionable because they involve the knowing disregard of Plaintiff's rights and the use of business practices designed to extract payments from Ohio consumers through threats and credit damage, even when the underlying debt is fraudulent.

59.     Yendo's pattern of conduct demonstrates a business model that prioritizes profit over consumer protection and legal compliance, resulting in harm to innocent identity theft victims who are forced to pay fraudulent debts to recover their own property.

60.     As a direct and proximate result of Defendant's unfair and deceptive acts and practices, Plaintiff suffered ascertainable losses including the forced payment of $5,130.02 for a non-existent debt, withdrawal from his retirement account, devastating damage to his credit reputation and score affecting future borrowing capacity, emotional distress, and time and effort spent addressing Defendant's deceptive practices.

61.     Plaintiff is entitled to actual damages in an amount to be determined, treble damages, non-economic damages of up to $5,000.00, and reasonable attorney fees pursuant to R.C. § 1345.09.

## COUNT FIVE:
## FRAUD - FILING FRAUDULENT LIEN BASED ON NON-EXISTENT DEBT

62.     Plaintiff restates and incorporates each of the allegations contained in the preceding paragraphs as if fully rewritten herein.

63.     Yendo made material false representations and concealed facts in connection with filing a lien on Plaintiff's vehicle, including:

      a.     Yendo falsely represented to the Ohio Bureau of Motor Vehicles and to credit reporting agencies that Plaintiff owed a legitimate debt when no valid debt existed, as Plaintiff never applied for, authorized, or received any loan proceeds;

b. Yendo falsely represented that it had properly verified the identity of the borrower when it had failed to implement reasonable verification procedures and ignored obvious red flags indicating identity theft;

c. Yendo concealed material facts indicating fraud, including its lack of basic contact information for the alleged borrower and the suspicious circumstances surrounding the loan application; and

d. Yendo falsely represented in its repossession notice that Plaintiff had "broken promises in our Agreement" when no valid agreement between Plaintiff and Yendo ever existed.

64. These representations were material to the transactions at hand because they were central to Yendo's ability to obtain lien placement on Plaintiff's vehicle through the Ohio BMV, justify repossession of Plaintiff's vehicle, report derogatory credit information to credit bureaus, and demand payment from Plaintiff under threat of vehicle sale.

65. Yendo made these representations with knowledge of their falsity or with such utter disregard and recklessness as to whether they were true or false that knowledge may be inferred, as evidenced by:

a. Yendo's own admissions during the April 23, 2025 phone call that it had no phone number for Plaintiff in its system and no correct email address for him;

b. Yendo's acknowledgment that it had no way to contact the alleged borrower;

c. The obvious discrepancies between the fraudulent application and Plaintiff's actual information; and

d. Yendo's refusal to investigate clear fraud indicators after being notified of identity theft.

16

66.     Yendo made these false representations with the intent of misleading others into relying upon them, including the Ohio BMV to obtain lien placement on Plaintiff's vehicle, credit reporting agencies to damage Plaintiff's credit, and Plaintiff himself to coerce payment of the fraudulent debt. This intent is evidenced by Yendo's persistent assertions of loan validity despite knowing the obvious fraud indicators and its refusal to provide documentation or investigate the fraud claims.

67.     The Ohio Bureau of Motor Vehicles, credit reporting agencies, and Plaintiff all justifiably relied upon Yendo's false representations. The Ohio Bureau of Motor Vehicles relied on Yendo's representations in issuing a new title with Yendo as lienholder, credit reporting agencies relied on Yendo's representations in reporting derogatory information about Plaintiff, and Plaintiff relied on Yendo's threat to sell his vehicle, compelling him to pay $5,130.02 to recover his own property.

68.     As a direct and proximate result of Plaintiff's and others' reliance on Yendo's fraudulent representations, Plaintiff suffered substantial injuries including payment of $5,130.02 for a non-existent debt, forced withdrawal from his retirement account, devastating damage to his credit score dropping from the 800s to 590, loss of use of his vehicle during the repossession period, emotional distress and mental anguish, and legal expenses and costs associated with addressing the fraud.

69.     Plaintiff has suffered actual, compensatory, and consequential damages as a direct and proximate result of Yendo's fraudulent conduct, and is entitled to recover such damages, along with punitive damages given the egregious nature of Yendo's conduct.

**COUNT SIX:**
**CONVERSION**

70.     Plaintiff restates and incorporates each of the allegations contained in the preceding paragraphs as if fully rewritten herein.

71.     At all times relevant herein, Plaintiff was the lawful owner of a 2015 Chevrolet Silverado 2500HD and was entitled to the exclusive possession, use, and control of said vehicle.

72.     On or about April 22, 2025, Yendo, without Plaintiff's knowledge, consent, or authorization, exercised dominion and control over Plaintiff's vehicle by causing it to be repossessed from Plaintiff's driveway in Macedonia, Ohio. Yendo then retained possession and control of the vehicle through its agent, Independent Recovery Systems, in Akron, Ohio.

73.     Yendo had no lawful right to possess or control Plaintiff's vehicle because:

    a.  Yendo's purported security interest was based entirely on a fraudulent loan application submitted by an unknown individual using Plaintiff's stolen personal identifying information. Plaintiff never applied for, authorized, or received any loan from Yendo, and therefore no valid debtor-creditor relationship existed between Plaintiff and Yendo;

    b.  Any documents purporting to grant Yendo rights in the collateral were fraudulently executed without Plaintiff's knowledge or consent, including the forged Limited Power of Attorney and security agreement; and

    c.  Yendo's lien on the vehicle was procured through material misrepresentations to the Ohio Bureau of Motor Vehicles, including the false claim that Plaintiff's original title was lost when Plaintiff retained possession of the original title at his home.

74.     Yendo's intent to exercise dominion and control over Plaintiff's vehicle is evidenced by its actions in causing the repossession, retaining possession of the vehicle at a

18

storage facility, threatening to sell the vehicle at a private sale, and demanding payment of $5,130.02 as a condition for return of Plaintiff's own property.

75.     Plaintiff immediately demanded return of his vehicle upon discovering the repossession on April 23, 2025, when he contacted Yendo by phone to report the identity theft and explain that he had never authorized any loan. Despite clear evidence of fraud, including Yendo's own admissions that it had no contact information for the alleged borrower, Yendo refused to return the vehicle and instead threatened to sell it unless Plaintiff paid the fraudulent debt.

76.     As a direct and proximate result of Yendo's conversion of his vehicle, Plaintiff was deprived of the use and possession of his property and was forced to pay $5,130.02 to recover his own vehicle. Plaintiff suffered additional damages including loss of use of the vehicle, inconvenience, withdrawal from his retirement account, emotional distress, and other consequential damages.

77.     Yendo's conversion was willful and malicious, as it continued to assert rights over Plaintiff's vehicle despite being notified of the identity theft, provided with police reports documenting the fraud, and made aware of obvious indicators that no valid loan relationship existed with Plaintiff.

**COUNT SEVEN:**
**NEGLIGENCE**

78.     Plaintiff restates and incorporates each of the allegations contained in the preceding paragraphs as if fully rewritten herein.

79.     Yendo owed a duty of reasonable care to Plaintiff and other members of the public to implement and follow reasonable procedures and industry standards when extending credit

19

secured by motor vehicles, including adequate verification of borrower identity and authenticity of loan applications before placing liens on consumer property.

80.     As a commercial lender operating in Ohio, Yendo had a duty to exercise reasonable care in verifying the identity of loan applicants, authenticating loan documents, and ensuring that security interests were only placed on vehicles owned by legitimate borrowers who had actually applied for and authorized such loans.

81.     Yendo further had a duty to investigate potential fraud when presented with clear indicators of identity theft and to refrain from pursuing collection activities against parties who provided credible evidence that they were victims of identity fraud.

82.     Yendo breached its duty of reasonable care by engaging in the following conduct that fell below the standard of care expected of a reasonable lender:

    a.  Yendo failed to implement adequate identity verification procedures before approving the loan application, despite advertising specific requirements on its website including vehicle documentation and photographs that should have revealed the fraudulent nature of the application;

    b.  Yendo failed to verify that the loan applicant was the actual owner of the vehicle being used as collateral, despite having access to title information and other means of verification;

    c.  Yendo approved a loan and placed a lien on Plaintiff's vehicle without ensuring that the actual vehicle owner had applied for or consented to the loan;

    d.  Yendo failed to investigate obvious red flags indicating fraud, including the discrepancies that became apparent when Yendo admitted it had no phone number or correct email address for the alleged borrower;

    e.   After being notified of the identity theft on April 23, 2025, and provided with police reports and fraud affidavits, Yendo failed to conduct any reasonable investigation into the fraud claims and instead dismissed them without inquiry;

    f.   Yendo continued to pursue collection activities against Plaintiff despite being presented with clear evidence of identity theft, including official police reports documenting the fraud; and

    g.   Yendo failed to implement reasonable safeguards to prevent the approval of fraudulent loan applications and the placement of liens on vehicles owned by identity theft victims.

83.    Yendo's negligent conduct was a proximate cause of Plaintiff's injuries because but for Yendo's failure to implement reasonable verification procedures and investigate obvious fraud indicators, the fraudulent loan would not have been approved, no lien would have been placed on Plaintiff's vehicle, and Plaintiff would not have suffered the resulting damages.

84.    Yendo's negligent conduct directly led to the repossession of Plaintiff's vehicle, the forced payment of $5,130.02, damage to Plaintiff's credit, and other related harms.

85.    The harm to Plaintiff was reasonably foreseeable as a natural and probable consequence of Yendo's negligent lending practices. It is foreseeable that inadequate identity verification procedures would result in fraudulent loans being approved and innocent vehicle owners suffering financial harm, property loss, and credit damage.

86.    As a direct and proximate result of Yendo's negligence, Plaintiff suffered actual damages including the forced payment of $5,130.02 to recover his own vehicle, withdrawal from his retirement account, damage to his credit score dropping from the 800s to 590, loss of use of

his vehicle during the repossession period, emotional distress, inconvenience, and other consequential damages.

**COUNT NINE:**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

87.    Plaintiff restates and incorporates each of the allegations contained in the preceding paragraphs as if fully rewritten herein.

88.    Yendo engaged in extreme and outrageous conduct that exceeded all bounds of decency tolerated in a civilized society. Specifically, Yendo's conduct included:

a.    Repossessing Plaintiff's vehicle based on a fraudulent loan that Yendo knew or should have known was procured through identity theft, causing Plaintiff to wake up and discover his vehicle missing from his own driveway without warning or explanation;

b.    Despite being immediately notified of the identity theft on April 23, 2025, and provided with police reports and fraud affidavits documenting the fraud, Yendo callously dismissed Plaintiff's claims and refused to conduct any investigation;

c.    Threatening to sell Plaintiff's own vehicle at a private sale unless he paid $5,130.02 for a debt he never incurred, effectively holding his property hostage and coercing payment through economic duress;

d.    Admitting during the same phone call that Yendo had no phone number for Plaintiff in its system and no correct email address, yet simultaneously asserting the validity of the loan and refusing to acknowledge the obvious fraud indicators;

e.    Sending an inadequate and deficient repossession notice that falsely claimed Plaintiff had "broken promises in our Agreement" when no valid agreement

22

existed, demonstrating callous indifference to the truth and Plaintiff's situation as
an innocent victim;

f.   Continuing to refuse all communication with Plaintiff after he paid the fraudulent
debt, leaving him without recourse or explanation while Yendo retained his
money for a non-existent obligation; and

g.   Reporting the fraudulent account to credit bureaus, causing Plaintiff's credit score
to plummet from the 800s to 590, thereby damaging his financial reputation and
future borrowing capacity.

89.    Yendo intended to cause emotional distress to Plaintiff, or acted with reckless
disregard as to whether its conduct would cause severe emotional distress. This intent is
evidenced by Yendo's deliberate decision to pursue aggressive collection tactics against a clear
identity theft victim, its threats to permanently deprive Plaintiff of his vehicle, and its systematic
refusal to investigate obvious fraud despite being provided with official documentation.

90.    As a direct result of Yendo's extreme and outrageous conduct, Plaintiff suffered
severe emotional distress including:

a.   Shock, confusion, and panic upon discovering his vehicle had been repossessed
from his own driveway for a debt he never incurred;

b.   Anxiety and fear that he would permanently lose his vehicle, which was essential
for his daily transportation needs;

c.   Humiliation and embarrassment at being treated as a debtor and having his
vehicle repossessed in his neighborhood;

d.   Frustration and helplessness in dealing with Yendo's refusal to investigate the
obvious fraud despite clear evidence of identity theft;

e.  Distress from being forced to withdraw money from his retirement account to pay a fraudulent debt under threat of losing his vehicle permanently;

f.  Ongoing anxiety and stress from the severe damage to his credit score and its impact on his financial future; and

g.  Mental anguish from being victimized twice - first by the identity thief and then by Yendo's callous and unreasonable response to his situation.

91.  Plaintiff's emotional distress was reasonable and justified given the extreme nature of Yendo's conduct. Any reasonable person in Plaintiff's position would suffer severe emotional distress from having their vehicle wrongfully repossessed, being threatened with its permanent loss, and being forced to pay thousands of dollars for a fraudulent debt while being treated with indifference and hostility by the responsible party.

92.  Yendo's extreme and outrageous conduct was the direct and proximate cause of Plaintiff's severe emotional distress. But for Yendo's callous and unreasonable actions in pursuing collection against an obvious identity theft victim, Plaintiff would not have suffered the severe emotional distress described herein.

**COUNT NINE:**
**UNJUST ENRICHMENT**

93.  Plaintiff restates and incorporates each of the allegations contained in the preceding paragraphs as if fully rewritten herein.

94.  Plaintiff conferred a benefit upon Yendo by paying $5,130.02 on April 25, 2025, to satisfy the alleged loan balance and recover his repossessed vehicle. This payment was made under duress and coercion after Yendo threatened to sell Plaintiff's vehicle at a private sale if the alleged debt was not paid.

95.     Yendo had knowledge of and accepted the benefit of Plaintiff's payment, as evidenced by Yendo's subsequent email congratulating Plaintiff on paying off the outstanding balance and confirming that his account was closed. Yendo retained the full amount of the payment and used it to satisfy what it claimed was an outstanding debt obligation.

96.     It would be unjust for Yendo to retain the benefit of Plaintiff's $5,130.02 payment because:

     a.  The underlying debt for which payment was made was entirely fraudulent, as Plaintiff never applied for, authorized, or received any loan from Yendo. No valid debtor-creditor relationship ever existed between Plaintiff and Yendo;

     b.  Yendo obtained the payment through coercion and threats to sell Plaintiff's own vehicle, taking advantage of Plaintiff's vulnerable position as an identity theft victim who faced the permanent loss of his property;

     c.  Yendo knew or should have known that its claim to the debt was invalid, as evidenced by its own admissions that it had no phone number or correct email address for the alleged borrower and its refusal to investigate clear indicators of fraud;

     d.  The payment was procured through Yendo's wrongful conduct in approving a fraudulent loan application, placing an invalid lien on Plaintiff's vehicle, and repossessing the vehicle without lawful authority; and

     e.  Yendo's retention of the payment rewards and incentivizes fraudulent lending practices and collection activities against innocent identity theft victims.

97.     Yendo has no valid legal or equitable basis for retaining the benefit of Plaintiff's payment because the underlying transaction was procured through fraud and identity theft. The

purported loan agreement and security documents were forged and executed without Plaintiff's knowledge or consent, rendering any claimed right to payment invalid.

98.     Plaintiff lacks an adequate remedy at law because Yendo has ceased all communication with Plaintiff, refused to provide documentation concerning the alleged account, and has taken the position that the matter is closed despite the fraudulent nature of the underlying transaction.

99.     Plaintiff suffered detriment as a result of the payment, including the loss of $5,130.02 that he was forced to withdraw from his retirement account, as well as the opportunity cost and investment returns he would have earned on those funds.

100.     Under the doctrine of unjust enrichment, Yendo should be required to make restitution to Plaintiff in the amount of $5,130.02, representing the benefit it unjustly received and retained at Plaintiff's expense.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff Laurence Strimple respectfully requests that this Court enter its order granting judgment in his favor against the Defendant Yendo, Inc. for the following:

A. For an award of actual damages to Plaintiff in an amount to be determined at trial against the Defendant for the allegations contained in all Counts of the Complaint;

B. For an award of statutory damages of $1,000.00 against the Defendant for the allegations contained in Count One;

C. For an award of statutory damages in an amount to be determined against the Defendant for the allegations in Count Three;

D. For an award of statutory non-economic damages of up to $5,000.00 to the Plaintiff against the Defendant for the allegations contained in Count Four;

E.  For an award of treble damages, as applicable, in an amount to be determined but not to exceed three (3) times Plaintiff's actual damages against the Defendant for the allegations contained in Count Four;

F.  For an award of punitive damages against the Defendant for the allegations contained in Count Five, Count Six, and Count Nine;

G.  For restitution in the amount of $5,130.02 against the Defendant for the allegations contained in Count Nine;

H.  For an award of Plaintiff's reasonable attorneys' fees and costs against the Defendant for the allegations contained in all Counts of the Complaint; and

I.  For all other relief this Court deems just and proper.

Respectfully submitted:

/s/ Marita I. Ramirez
Marita I. Ramirez (0101882)
Marc E. Dann (0039425)
Brian D. Flick (0081605)
DannLaw
15000 Madison Ave.
Lakewood, OH 44107
(216) 373-0539
(216) 373-0536 – fax
notices@dannlaw.com

_____/s/ Corey Flowers_____
**Corey Flowers, Esq. (0090658)**
**THE FLOWERS LAW FIRM, LLC**
183 W. Aurora Road, Rear Suite
Northfield, Ohio 44067
T: (330) 468-4878
F: (330) 468-3544

*Attorneys for Plaintiff Laurence Strimple*

27

## **JURY TRIAL DEMAND**

Plaintiff demands a jury trial on  all issues of fact.

> /s/ Marita I. Ramirez
> Marita I. Ramirez (0101882)
> Marc E. Dann (0039425)
> Brian D. Flick (0081605)
> DannLaw
> *Attorneys for Plaintiff Laurence Strimple*